## Commonwealth v. One 1978 Porsche Coupe

269

*Edward F. Kane,* for defendant.
*Maurice Levin,* for Commonwealth.

SMILLIE, *J.,* June 10, 1981—On August 26, 1980, an undercover officer of the Pennsylvania State Police purchased 35.0 grams of cocaine from Stephen C. Setzman in the lower parking lot of the George Washington Motor Lodge on Route 611 in Upper Moreland Township, Montgomery County, Pa., when Setzman arrived in a 1978 Porsche Coupe from which he sold the cocaine.

In consequence of the sale of cocaine from the Porsche Coupe, the car was forfeited.

At the time, Stephen C. Setzman was on probation, having been sentenced on July 25, 1980 after pleading guilty to charges of burglary, criminal conspiracy, and violation of the Controlled Substances Act.

Respondent appeals from the order of forfeiture dated March 24, 1981, necessitating the opinion herewith.

The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, 35 P.S. §780-128 provides that conveyances which are used to transport controlled substances are subject to forfeiture. However, section 28(4)(ii) of the act, 35 P.S. §780-128(4)(ii) provides:

(N)o conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent;

The Porsche Coupe is owned and registered in the name of Total Data Services Company of which Stephen C. Setzman is President. In turn, Total Data Services Company is owned by K. S. Data Processing, Inc., which is wholly owned by Bernard and Eleanor Setzman, father and mother of Stephen. Respondent seeks to avoid forfeiture on the basis that the vehicle's owner did not have knowledge of or consent to its use in facilitating transportation of contraband.

Assignment of title to the Porsche Coupe was made to Total Data Services Company on March 30, 1979. The same day, an application for certificate of title was made by Stephen C. Setzman, as President of Total Data Services Company. Previously, K. S. Data Processing, Inc. had filed a fictitious name registration to conduct business under the name Total Data Services Company. Stephen C. Setzman is President of K. S. Data Processing, Inc., the company which was the ultimate owner of the Porsche Coupe.

The crucial issue is whether or not the owner of

the Porsche Coupe consented to or had knowledge of the transportation of contraband.

A corporation cannot see or know anything except by the eyes of intelligence of its officers; and a corporate body, as a legal entity, cannot itself have knowledge. If it can be said to have knowledge at all, that must be the imputed knowledge of some corporate agent. Knowledge of the proper corporate agent must be regarded, in legal effect, as the knowledge of the corporation. . . . 3 Fletcher Cyc. Corp. (Perm Ed) Section 787; National Bank of Shamokin v. Waynesburg Knitting Co., 314 Pa. 365, 374, 172 A. 131, 134 (1934).

K. S. Data Processing, Inc., does business under the fictitious name of Total Data Services Company. In essence they are one entity. The knowledge which one acquires the other possesses. If knowledge is to be imputed to the corporation, it must obviously occur through the human, Stephen C. Setzman, its President.

It is the general rule that notice to and knowledge of the president of a corporation relating to its affairs and business is notice to and knowledge of the corporation, especially where he is in effect the company, or its chief stockholder, or where he is in effect the general manager. . . . 3 Fletcher Cyc. Corp. (Perm Ed) Section 811.

In Com. v. McIlwain School Bus Lines, 283 Pa. Superior Ct. 1, 423 A. 2d 413 (1980), a corporation was held criminally liable for homicide by vehicle when it failed to install mirrors on one of its buses as required by law, thereby resulting in the death of a school child.

Knowledge of Stephen C. Setzman's use of the Porsche for personal purposes is properly imputed

to Total Data Services Company since Setzman himself represented the corporation in executing its vehicle registration and application for title. Similarly, knowledge of the Porsche's use to transport contraband is properly attributed to Total Data Services Company since Setzman himself had direct control over the vehicle. Consent may also be inferred on the basis of Setzman's continued access to the vehicle while on probation from a previous drug offense only one month earlier.

Consent by the owner to the vehicle's use in transporting contraband is sufficient to establish grounds for forfeiture under the Controlled Substances, Drug, Device and Cosmetic Act, 35 P.S. Section 780-128(4)(ii). "(A) corporation is an entity distinct from its employees and is severally liable for their acts, . . . " Com. v. J. P. Mascaro and Sons, Inc., 266 Pa. Superior Ct. 8, 402 A. 2d 1050 (1979); Northeast Dodge v. Com., 54 Pa. Commonwealth Ct. 182, 420 A. 2d 771, 773 (1980).

The entity in this situation is a "close" corporation; its sole owners are the parents of Stephen C. Setzman.

A corporate entity should be recognized and upheld except in the most unusual instances. However, in appropriate circumstances, the corporate entity will be disregarded. These include the prevention of fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.

The fiction of a corporation as an entity distinct from the aggregate of individuals comprising it was designed to serve convenience and justice. There is consequently an exception recognized wherever the rule is known, namely, that the fiction will be

disregarded and the individuals and corporation considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless. Tucker v. Binenstock, 310 Pa. 254, 263, 165 A. 247, 250 (1933).

The corporate veil is properly pierced when one in control of the corporation uses that control or corporate assets to further one's own personal interests: College Watercolor Group, Inc. v. Newbauer, 468 Pa. 103, 116-117, 360 A. 2d 200, 207 (1976).

The elder Setzman denies knowledge of his son's involvement with drug trafficking, yet on July 25, 1980, one month prior to the son's apprehension on the cocaine charge, the father attended his son's sentencing on a charge involving use of a controlled substance—Phencyclidine (PCP).

We consider the elder Setzman's statements to be of no probative value. He is personally interested in these proceedings involving forfeiture of the Porsche since his son is still facing outstanding criminal charges relating to the sale of cocaine. Furthermore, the elder Setzman is financially interested since he stands to lose financially as a shareholder if the Porsche is forfeited.

The fact is that the father was aware of his son's involvement with drugs. As noted, he was present at his son's sentencing on prior drug charges. To have allowed the son's continued use of the company's Porsche Coupe represented a risk the father and the company were willing to take, and a responsibility that Total Data Services must bear. To permit Total Data Services to disassociate itself from Stephen C. Setzman for purposes of liability for forfeiture would be an error. The Common-

wealth showed Stephen C. Setzman utilized the vehicle for illicit purposes; there was no rebuttal that such use was not known to the corporation or was without its consent.

A certified copy of Stephen C. Setzman's Gagnon II hearing for violation of probation was admitted into evidence at the hearing on the petition for forfeiture. On issues of evidence, forfeiture proceedings should be treated as civil proceedings with the Commonwealth having the burden of proving the material allegations by a preponderance of the evidence: Com. v. Landy, 240 Pa. Superior Ct. 458, 470, 362 A. 2d 999, 1005 (1976). The certified transcript of the Gagnon II hearing qualifies under the Public Records Exceptions to the Hearsay Rule: 42 Pa.C.S.A. 6109.

The transcript from Stephen C. Setzman's Gagnon II hearing contains testimony by a county detective indicating laboratory results showing the seized substance to be 35.0 grams of 19.3 percent cocaine. Indeed, Stephen C. Setzman's own direct testimony elicited by his own attorney at that Gagnon II hearing admits Setzman knew the substance he sold was cocaine.

Q. And you purchased the cocaine from another person—or did you actually purchase it from somebody else?
A. I just obtained it from somebody.
Q. And was it your understanding that this cocaine was for Mr. Leight?
A. Yes, it was.
Q. And you arranged to meet him August 26th and you then gave him the cocaine; is that correct?
A. That's correct.
Q. And then you received in return the $2300?
A. Yes, sir.

Stephen C. Setzman was transporting cocaine in the corporation's Porsche with the intent to deliver on the night of his arrest on August 26, 1980. A preponderance of the evidence adduced that the corporate owner of the Porsche Coupe had knowledge and consented to the Porsche's use by Stephen C. Setzman to transport cocaine.

Accordingly, the appeal should be dismissed and the Porsche Coupe forfeited to the Commonwealth.

## ORDER SUR PETITION FOR FORFEITURE

And now, March 24, 1981, after hearing, and upon consideration of memoranda of law filed, the petition for forfeiture is allowed, and it is ordered that Total Data Services forfeit to the Commonwealth of Pennsylvania one 1978 Porsche Coupe, Manufacturer's Serial no. 9288200561, Pennsylvania Registration no. 3V7-340, in accordance with sections 28 and 29 of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S., 780-128 and 129.