528 A.2d 685

Insurance Company of North America, Appellant v. Centre Concrete Company, a corporation, Appellee.

Argued May 22, 1987, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Louis C. Long, Meyer, Darragh, Buckler, Bebenek & Eck,* for appellant.

*David J. Kaltenbaugh,* with him, *Gilbert E. Caroff,* for appellee.

OPINION BY JUDGE CRAIG, July 13, 1987:

Insurance Company of North America (INA) has filed an interlocutory appeal[1] of an order by the Court

---

[1] Consistent with 42 Pa. C. S. §702(b) and Pa. R.A.P. 1311, this court, after certification by the trial court, granted INA's petition to appeal by order dated September 16, 1985.

of Common Pleas of Cambria County which denied INA's motion for judgment on the pleadings. The primary issue raised by that motion and by the present appeal is whether an assumpsit action by Centre Concrete Company against contractor AGI, Inc., and its surety, INA, was filed after the expiration of the statute of limitations.

The facts are not at issue. AGI, Inc., was awarded a road construction contract by the Commonwealth of Pennsylvania, Department of Transportation. To that end, AGI contracted with Centre for the latter to supply materials for the project. Following Centre's final delivery of materials on October 21, 1982, AGI owed Centre $26,114.75 for materials furnished but has not made payment. On January 11, 1983, Centre submitted its claim to INA, which had issued to AGI a payment bond, as required by section 3(a)(2) of Public Works Contractors' Bond Law of 1967 (Bond Law), Act of December 20, 1967, P.L. 869, 8 P.S. §193(a)(2).[2]

---

[2] That subsection provides in part:

(a)  Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

(2)  A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work.

8 P.S. §193(a)(2).

On December 2, 1983, INA wrote to Centre,

Under Pennsylvania law you were required to file suit within one year from the last day you performed work or supplied material on the project. . . . [T]he last date you furnished labor, material or supplies and services in connection with the job was on October 21, 1982. Consequently, we are not in a position to honor your claim.

Centre then filed suit against AGI and INA on the bond on December 2, 1983. In new matter, INA raised the affirmative defense that Centre's action was time-barred and then moved for judgment on the pleadings.

INA's statement refusing payment does in fact reflect the literal language of section 7(b) of the Bond Law, 8 P.S. §197, which was repealed by the Judical Act Repealer Act (JARA), Act of April 28, 1978, P.L. 202, 42 Pa. C. S. §2001-2004. Section 7(b) had provided that no action upon a payment bond could be commenced after the expiration of one year from the day on which the last of the labor or material had been supplied. Based upon that language, the Pennsylvania courts had uniformly recognized that the statute of limitations began to run on that final supply date. *See Valley Forge Industries, Inc. v. Armand Construction, Inc.,* 38 Pa. Commonwealth Ct. 603, 394 A.2d 677 (1978); *C. M. Eichenlaub Co. v. Fidelity & Deposit Co. of Maryland,* 293 Pa. Superior Ct. 11, 437 A.2d 965 (1981).

Repealed section 7 of the Bond Law was replaced by sections 5523(3) and 5502(a) of the Judicial Code, 42 Pa. C. S. §§5523(3), 5502(a). Under section 5523(3) of the Judicial Code, 42 Pa. C. S. §5523(3), "[t]he following actions and proceedings must be commenced within one year: . . . an action upon any payment or performance bond." Section 5502(a) of the Judicial Code, 42 Pa. C. S. §5502(a) adds that "[t]he time within which a matter must be commenced under this chapter shall be

computed . . . from the time of the cause of action accrued." Therefore, the timeliness of Centre's appeal turns upon the question of when Centre's cause of action against INA accrued.

INA contends that the final supply date continues to begin the one-year period, and therefore argues that a claimant's cause of action accrues on that date. Of course, under INA's theory, Centre's cause of action would have accrued at the time of its October 21, 1982 final delivery, giving Centre until October 21, 1983 to file its complaint. Accordingly, the December 2, 1983 filing would have been untimely.

However, appellee Centre persuaded the trial court that the accrual of its cause of action is now controlled by section 4(a) of the Bond Law, 8 P.S. §194(a), which, in order to facilitate the settlement of claims, imposes a 90-day waiting period after final delivery before a claimant may file suit. That section provides:

> Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given, . . . and who has not been paid in full therefore . . . before the expiration of 90 days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments, may bring an action on such payment bond in his own name, in assumpsit, to recover any amount due him for such labor or material. . . .

8 P.S. §194(a).

Centre views the passage of that 90-day period as a prerequisite for the accrual of a cause of action against the surety for payment of a bond issued pursuant to a public works contract. Under that theory, Centre's cause of action would have accrued on January 20, 1983,

the 91st day after its final delivery on October 21, 1982. Accordingly, the filing of its complaint on December 2, 1983 would have fallen within the one-year statute of limitations.

We agree with INA that, notwithstanding Centre's statutory inability to file suit until 90 days after its final delivery, AGI's failure to make payment upon the final delivery on October 21, 1982 constitued a breach of the underlying construction materials contract[3] and also established Centre's cause of action against INA at that time.

In *Eichenlaub*, 293 Pa. Superior Ct. at 14, 437 A.2d at 966-67, the majority wrote, "[w]here, as here, the liability of a surety is concerned, the provisions of the underlying contract must be examined, since the liability of a surety, such as Fidelity, commences only upon breach of the underlying contract."

We agree with that view to the extent that the surety's obligation cannot commence before the underlying contract has been breached. However, the precise point at which the surety becomes liable based upon the underlying cause of action can be determined only by referring to the surety agreement. In the present case, that agreement, between AGI as principal, and INA as surety, provides:

The PRINCIPAL and SURETY hereby, jointly and severally, agree with the obligee [Common-

---

[3] *Compare Bell v. Brady,* 346 Pa. 666, 31 A.2d 547 (1943), where the Supreme Court concluded that, in an action by the Secretary of Banking on behalf of an insolvent bank to recover an assessment for unpaid stock subscriptions against the stockholders, the statute of limitations did not begin to run until the Secretary made a demand upon the stockholders, as directed by section 723 of the Department of Banking Act of May 15, 1933, P.L. 565.

In the present case, although Centre alleged in its complaint that it demanded payment of AGI on January 4, 1983, that demand was unnecessary to establish Centre's cause of action for breach of contract.

wealth] herein that any . . . corporation, which has performed labor or furnished material in the prosecution of the work as provided, . . . and which has not been paid in full therefor, may sue in assumpsit on this Payment Bond in his, their, or its own name and may prosecute the same to final judgment for such sum or sums as may be justly due him, them, or it, and have execution thereon.

That language indicates that the surety's obligation arises simultaneously with that of the principal of the underlying contract, that is, when the duty to pay for services performed has arisen. Here, that occasion was the date of Centre's final delivery.

Our view is consistent with that of Judge BROSKY, who dissented in *Eichenlaub*. There, the language of the surety agreement was practically identical to the language here, and Judge BROSKY reasoned that the cause of action accrued on the day the last of the labor and materials was supplied.[4]

However, although INA's obligation under the surety agreement arose on the date of Centre's final delivery of materials, the fact remains that section 4(a) of the Bond Law prevented Centre from filing suit against INA until ninety days had passed.

---

[4] The underlying contract in *Eichenlaub* would appear to have been subject to the Bond Law because it involved a project at a township library. Under section 2(2) of the Bond Law, 8 P.S. §192(2), a township qualifies as a "contracting body" which is subject to the Bond Law. However, neither the majority nor dissent made reference to the Bond Law. Although the majority concluded that summary judgment was inappropriate because the surety had failed to establish the absence of a factual dispute, Judge BROSKY, in dissent, suggested that summary judgment on behalf of the surety was appropriate because the claimant, contrary to the one-year statute of limitations set forth in the surety agreement, filed suit more than one year after the final delivery of materials.

Nevertheless, a cause of action accrues when a party has the *right* to bring an action, even though legal authorization to sue may be delayed. By way of example, INA draws the scenario of a plaintiff who incurs a personal injury on the weekend: he has the *right* to bring suit immediately upon occurrence of the injury; yet he is powerless to institute the action before the courthouse opens on Monday. The plaintiff would have two years from that Saturday to bring his action although he was not in fact able to file suit until Monday. Although section 4(a) of the Bond Law disables a claimant from filing suit for 90 days after final delivery, we cannot say that during that period he does not have a *right* to payment according to the terms of the surety agreement.

Although the ninety-day limitation allows a claimant fewer days upon which he can file his complaint, we do not view that limitation as a hardship which makes our construction unfair. The claimant, when he does not receive payment at the time it is due, is aware immediately that the other party has breached. Although INA did not refuse to pay Centre on the bond until almost one year after Centre's demand for payment, AGI's refusal to pay, not INA's, established Centre's cause of action.

We therefore conclude that Centre's cause of action accrued when it had a right to sue on the underlying contract, and accordingly, we reject Centre's suggestion that the ninety-day filing limitation is a prerequisite to the inception of a claimant's cause of action on a payment bond.

Centre's filing of its complaint on December 2, 1983 was therefore untimely. We reverse the decision of the trial court.

## ORDER

Now, July 13, 1987, the order of the Court of Common Pleas of Cambria County, dated July 5, 1985, at No. 1983-3263, is reversed.